FILED
2013 Aug-13  PM 03:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| SHEILA HALL GRIFFIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:12-cv-0950-LSC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

## I.    Introduction

The plaintiff, Sheila Hall Griffin, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Ms. Griffin timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Griffin was fifty years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a general education diploma (GED). (Tr. at 135, 173.)

Her past work experiences include employment as a sales associate, a cashier and a deli clerk. (Tr. at 169-70, 185-92.) Ms. Griffin claims that she became disabled on January 23, 2009, due to post-traumatic stress disorder (PTSD), major depression, anxiety, and panic attacks. (Tr. at 60, 135-36, 168.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20

C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Griffin meets the nondisability requirements for a period of disability and DIB, and was insured through the date of his decision. (Tr. at 23.) He further determined that Ms. Griffin has not engaged in substantial gainful activity since the alleged onset of her

disability. (*Id.*) According to the ALJ, Plaintiff's mood disorder, depression, PTSD, and anxiety disorder are considered "severe" based on the requirements set forth in the regulations. (Tr. at 24.) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ did not find Ms. Griffin's allegations to be totally credible, and he determined that she has a residual functional capacity allowing her to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> Moderately limited in abilities to: 1) understand and remember and carry out detailed instructions; 2) maintain attention and concentration for extended periods of approximately 2 hour segments; 3) work in coordination with or proximity to others without being unduly distracted by them; 4) complete a normal workday and workweek without interruptions from psychologically based symptoms; 5) response to customers or other members of the general public; 6) ask simple questions or request assistance; 7) respond appropriately to supervision and coworkers; 8) respond appropriately to changes in work setting; and 9) set realistic goals or to make plans independently of others.

(Tr. at 25.) According to the ALJ, Ms. Griffin is capable of performing any of her past relevant work as an unskilled worker, cashier, deli slicer clerk, medical housekeeper, and general office clerk as actually and generally performed.  (Tr. at 28.) The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined

in the Social Security Act, from January 23, 2009, through the date of this decision."

(*Id*.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against

the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Plaintiff argues that the ALJ's decision should be reversed and remanded for three reasons. First, she contends that the ALJ failed to afford proper weight to the various medical opinions in the record. (Doc. 8 at 9.) Second, Plaintiff contends that the ALJ did not properly evaluate her credibility. (*Id*. at 15.) Third, she asserts that the ALJ relied upon flawed vocational expert testimony. (*Id*. at 19.)

### A.   Weight Given to Medical Opinions

Plaintiff contends that the ALJ erred in giving little weight to the opinion of Dr. Glenn Archibald and giving no weight to the opinion of Mr. Richard Yates, both of whom Plaintiff claims are treating physicians. (*Id*. at 10.) Plaintiff also contends that the ALJ improperly gave substantial weight to the opinion of Dr. Robert G.

Summerlin, a one-time examining psychiatrist. (*Id*. at 11.) The Court will address these arguments in order.

### 1) Dr. Archibald and Mr. Yates

Dr. Glenn Archibald, a clinical psychiatrist at Southern Behavioral Health Associates, treated Plaintiff on several occasions between June 2008 and September 2009. On November 4, 2009, Dr. Archibald completed a Psychiatric/Psychological Impairment Questionnaire for Plaintiff. (Tr. at 220–27.)  In the Questionnaire, Dr. Archibald noted that he had seen Plaintiff on a recurring basis for medication management and therapy. (Tr. at 220.) He diagnosed her with anxiety, depressive disorder, and dependent personality disorder. (*Id*.) Dr. Archibald's prognosis was "unlikely to sustain adequate social or work function." (*Id*.) He assessed Plaintiff with marked limitations in her ability to work in coordination with or proximity to others without being distracted by them; her ability to complete a normal workweek without interruptions from psychologically based symptoms; her ability to interact appropriately with the general public; her ability to accept instructions and respond appropriately to criticism from supervisors; her ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and, her ability to respond appropriately to changes in the work setting. (Tr. 223–24.) He found that

Plaintiff had mild and moderate limitations in all other areas with no limitation in her ability to travel to unfamiliar places and use public transportation. (Tr. 223–25.) Finally, Dr. Archibald reported that Plaintiff experienced episodes of deterioration or decompensation in work or work-like settings that caused her to withdraw (Tr. at 225), and that she would be absent from work, on average, more than three times a month as a result of her impairments or treatment. (Tr. at 227.)

Mr. Richard Yates, a licenced practical counselor at Southern Behavioral Health Associates, began counseling Plaintiff in May 2008. The record indicates that Plaintiff saw Mr. Yates three times in 2008 and six times in 2009. In April 2011, Mr. Yates completed a Psychiatric/Psychological Impairment Questionnaire for Plaintiff. (Tr. at 247.) In the questionnaire, Mr. Yates reported that he had seen Plaintiff monthly since May 2008,[1] and he diagnosed her with depressive disorder, anxiety, and dependent personality disorder. (*Id.*) Mr. Yates additionally checked boxes suggesting that Plaintiff was markedly limited in her ability to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; and to sustain ordinary routine without supervision. (Tr. at 250–52.) Mr. Yates indicated Plaintiff

---

[1] The records for most of these visits are not part of the administrative transcript.

was unable to handle high levels of stress, would decompensate in the work setting, and was incapable of even low stress jobs based on her work history. (Tr. 253.)

After reviewing the medical records, the ALJ determined that the assessments provided by Dr. Archibald and Mr. Yates were entitled to little weight "as they are not supported by the medical evidence of record. (Tr. at 28.) Plaintiff argues this determination was in error.

As an initial matter, the Court must be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Accordingly, to the extent Dr. Archibald and Mr. Yates submitted opinions that Plaintiff is unable to work, it was entirely proper for the ALJ to reject those opinions. The ALJ has the responsibility of determining whether Plaintiff was able to work, and therefore, the findings of Dr.

Archibald and Mr. Yates regarding this issue were not entitled to special significance or controlling weight. *Lewis*, 125 F.3d at 1440.

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis*, 125 F.3d at 1440). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The ALJ articulated "good cause" for determining that the assessments provided by Dr. Archibald and Mr. Yates were entitled to little weight, including that: (1) their opinions were not bolstered by the medical evidence of record; (2) their opinions were inconsistent with the findings of Dr. Summerlin and Dr. Jackson; (3) Plaintiff's reports of her daily activities contradicted their findings, and (4) Mr. Yates's opinion was conclusory. (Tr. at 26-28.)

First, the ALJ properly determined that the opinions of Mr. Yates and Dr. Archibald were not supported by their own medical evidence of record. (Tr.at 28.) Although the treatment notes from Southern Behavioral Health Associates indicate that Plaintiff's job caused her stress and that she had varying levels of anxiety depending upon her work and home situation (Tr. at 208-16), there is no indication that Plaintiff's mental impairments were of such a severity as to preclude her ability to work. For example, not once did Dr. Archibald note that Plaintiff had difficulty accepting instructions on taking medication, or was incapable of interacting with him or his staff, but yet he opined Plaintiff was markedly limited in her ability to accept instruction and interact with the general public. (Tr. 224.) Additionally, Plaintiff has had limited mental health treatment and she has never been hospitalized for psychiatric treatment. Lastly, both Dr. Archibald and Mr. Yates rely upon

psychological testing that was allegedly performed by June Nichols, Psy.D. (Tr. 221, 248.) However, neither Plaintiff nor Southern Behavioral Health Associates provided Dr. Nichols' tests, and, therefore, it would have been impossible for the ALJ to determine whether those tests supported the severe assessments submitted by Dr. Archibald and Mr. Yates.

Second, the ALJ correctly recognized that Dr. Archibald and Mr. Yates opinions conflicted with opinions of other doctors who examined Plaintiff, namely Dr. Melissa Jackson and Dr. Robert Summerlin. Dr. Jackson, a medical consultant with Disability Determination Service (DDS), examined and evaluated Plaintiff on January 12, 2010. During the examination, Dr. Jackson completed a Psychiatric Review Technique assessment, wherein she concluded that Plaintiff's mental impairment was not severe. (Tr. at 232.) While Dr. Jackson diagnosed a mood disorder, she opined that Plaintiff only has mild restrictions on activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. (Tr. at 235, 242.)

Dr. Summerlin completed a mental examination for Plaintiff on January 8, 2010. Like Dr. Jackson, Dr. Summerlin also diagnosed a mood disorder. However, at the same time he found that Plaintiff had a global assessment score (GAF) of 60,

which demonstrates only moderate emotional symptoms affecting personal, social and occupational functioning. (Tr. at 231.) Dr. Summerlin concluded that "[a]vailable records and interview data do not support the presence of a psychological disorder which would cause Ms. Griffin to be unemployable. Additionally, Ms. Griffin identified no medical problems that would preclude the participation in meaningful work activity." (Tr. at 231.)

It is apparent that both Dr. Jackson and Dr. Summerlin's opinions directly contradict the opinions from Dr. Archibald and Mr. Yates. Therefore, the ALJ correctly noted these conflicts as a basis for discrediting Dr. Archibald and Mr. Yates opinions.

Third, the ALJ considered the range of Plaintiff's daily activities as grounds for rejecting the opinions of Dr. Archibald and Mr. Yates. In her statement to Dr. Summerlin, Plaintiff said she is able to bathe, dress, and groom herself without assistance, and she participates in customary household chores. She also drives a vehicle, shops, visits with family members, watches television, and attends church services. (*Id.*) While these activities are not alone sufficient to find that Plaintiff is capable of working, the ALJ properly considered Plaintiff's activities together with the other evidence in accordance with SSR 96-7p and Eleventh Circuit case law. (Tr. at

27-28.) *See also* 20 C.F.R. § 416.29(c)(3)(i); *Dyer v. Barnhart*, 395 F.3d 1206 (11th Cir. 2005).

Finally, the ALJ correctly disregarded Mr. Yates's opinion because his diagnosis was conclusory. Mr. Yates completed a psychological impairment questionnaire on April 13, 2011. (Tr. at 247.) In the questionnaire, Mr. Yates indicated that Plaintiff achieved a GAF score of 39 and that her lowest past GAF score of 30. (*Id.*) Despite the score's potential representation for severe mental impairment, the ALJ otherwise appropriately noted that the Commissioner has specifically declined to endorse the GAF scale for use in the disability program, and has stated that the GAF scale does not have a direct correlation to the severity requirements in our mental disorders listings. (Tr. at 26.) The ALJ further explained that while the GAF scores may be indicative of Plaintiff's alleged level of functioning on the date of treatment, the scores are assigned little weight when considering the cumulative evidence of record regarding Plaintiff's overall mental health condition. (*Id.*) As the ALJ correctly noted, Mr. Yates's diagnoses that were based on Plaintiff's unreliable GAF scores were conclusory, providing a "good cause" for the ALJ to give Mr. Yates's opinion less weight.

**2) Dr. Summerlin's opinion**

Dr. Robert G. Summerlin, Ph.D. examined Plaintiff on January 8, 2010. (Tr. at 229.) Dr. Summerlin found that Plaintiff was spontaneous, cordial and responsive during her examination. (Tr. at 230.) He also noted that Plaintiff was oriented in regards to person, place, time, and circumstance with no abnormalities in speech pattern. (*Id.*) Dr. Summerlin's records reflect that he believe Plaintiff had adequate attention and concentration and had intact recent and remote memory functioning. (*Id.*)  Further, he found that Plaintiff's thought processes were logical, coherent, and focused, with thought content responsive to questioning. (*Id.*) Dr. Summerlin diagnosed Plaintiff with mood disorder, not otherwise specified (Tr. 231). However, based on his review of the medical records and his consultive evaluation, Dr. Sumerlin opined that "[a]vailable records and interview data do not support the presence of a psychological disorder which would cause Ms. Griffin to be unemployable." (*Id.*)

To determine the weight given to a medical opinion, an ALJ must consider several factors, including the examining relationship, the treatment relationship, the evidence presented to support the opinion, the consistency of the opinion with other evidence, and the specialization of the medical professional. An ALJ will give more weight to the medical opinions of a source who has examined the plaintiff than to a source who has not examined the plaintiff and opinions that are supported by medical

signs and findings and are consistent with the overall "record as a whole". 20 C.F.R. § 404.1527(c). *See Davis v. Coom'r of Soc. Sec.,* 449 F. App'x 828, 832 (11th Cir. 2011).

The ALJ's assignment of substantial weight to Dr. Summerlin was proper. (Tr. at 28.) The following considerations support the degree of weight the ALJ afforded Dr. Summerlin's opinion: 1) Dr. Summerlin was an examining psychiatrist; 2) Dr. Summerlin supported his opinion with medical signs and findings; and 3) Dr. Summerlin's opinion accounted for and was consistent with Plaintiff's overall medical record. (Tr. at 27.)

Dr. Summerlin examined Plaintiff on January 8, 2010. (Tr. at 228.) Contrary to Plaintiff's argument that Dr. Summerlin provided a vague assessment, Dr. Summerlin carefully and thoroughly reviewed Plaintiff's medical history and conducted a series of tests to determine Plaintiff's mental status. (Tr. at 228-31.) Dr. Summerlin observed that Plaintiff was well-groomed and spoke normally. (Tr. at 230.) He also asked Plaintiff to perform certain tasks and answer certain questions in order to assess her mental status. (Tr. at 229-30.)  Dr. Summerlin also stated that he took into account the medical evidence of record indicating Plaintiff's mental impairments when making his opinion, and his diagnoses of mood disorder are consistent with previous diagnoses of Plaintiff. (Tr. at 229-31.) Accordingly, there is substantial

evidence to support the ALJ's decision to assign substantial weight to Dr. Summerlin's opinion.

For these reasons, the Court is of the opinion that the ALJ had good cause to discount on the opinions provided by Dr. Archibald and Mr. Yates. *See Crawford*, 363 F.3d at 1159-60; *Phillips*, 357 F.3d at 1240-41. The ALJ also properly evaluated Dr. Summerlin's assessment.

### B.    The ALJ's Evaluation of Ms. Griffin's Credibility

Ms. Griffin contends that the ALJ failed to properly evaluate the credibility of her testimony of disabling symptoms in accordance with the Eleventh Circuit's "pain standard." (Doc. 8 at 16.) Specifically, Ms. Griffin alleges that the ALJ applied the wrong standard, and was comparing Plaintiff's statements to his RFC finding and not to the objective medical evidence. (Doc. 9 at 15-19.)

A claimant's subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, the pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined

medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* at 1560; *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

Once the pain standard is satisfied, the ALJ must consider a claimant's subjective testimony of pain and other symptoms. *Foote*, 67 F.3d at 1560; *see also Minter v. Astrue,* 722 F. Supp. 2d 1279, 1282 (N.D. Ala. 2010) (finding that "if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited."). The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "the implication must be obvious to the reviewing court." *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). The ALJ is not required to cite "particular phrases or formulations" in

his credibility determination, but it cannot be a broad rejection which is not enough to enable this court to conclude that the ALJ considered her medical condition as a whole." *Id*.

In this case, the ALJ found that Ms. Griffin met the first prong of the Eleventh Circuit's pain standard but the ALJ did not believe that the evidence as a whole confirmed the severity of the alleged pain arising from that condition or that any impairment of such severity could reasonably be expected to give rise to the disabling pain and other limitations alleged by Plaintiff. (Tr. at 28.) Specifically the ALJ found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id*.)

The record supports the ALJ's conclusions. The ALJ correctly noted that the objective evidence contradicts Plaintiff's allegations of total disability under the Social Security Act. (Tr. at 27.) Dr. Jackson examined Plaintiff and concluded that Plaintiff's mental impairment was not severe with only mild restrictions on her mental functions. (Tr. at 232-45.) Dr. Summerlin similarly reported that Plaintiff is only moderately

affected by her emotional symptoms. (Tr. at 229-31.) Additionally, the ALJ took note of the fact that "considering the severity of Plaintiff's allegations . . . she has had limited mental health treatment and she has never been hospitalized for psychiatric treatment." (Tr. at 27.) The ALJ also properly considered Plaintiff's reports of her daily activities and the medical evidence, noting Plaintiff's statements to Dr. Summerlin that she could bathe, dress, and groom herself, cook, clean and do laundry, talk on the telephone, drive, shop, visit with family members, watch TV, listen to the radio, and attend church services. (Tr. at 27-28, 230.) The ALJ correctly concluded that based on these activities, along with the objective medical evidence, Plaintiff's allegations of disabling symptoms were not credible (Tr. at 27-28.) Finally, the ALJ correctly noted that although Plaintiff testified to a worsening of her symptoms since her consultative examination, the medical evidence does not reflect substantial mental health treatment to deal with her alleged mental condition. (*Id.*) The only medical evidence Plaintiff submitted between January 2010 and April 2011 related to ambulatory arthroscopic surgery on Plaintiff's elbow, not a decline in her mental status. (Tr. at 259-60.)

The ALJ properly considered all the evidence, and articulated several reasons, supported by substantial evidence, for discrediting Plaintiff's testimony. This Court

will not substitute its judgment for that of the ALJ's when, as here, it is supported by substantial evidence. Therefore, Plaintiff's subjective complaints of pain were properly discredited under the Eleventh Circuit pain standard.

### C.    The ALJ's Reliance on Vocational Expert Testimony

Plaintiff finally argues that because the ALJ's RFC determination was not supported by substantial evidence, the hypothetical question posed to the VE based on that RFC was equally unsupported and cannot constitute substantial evidence in support of the ALJ's determination that Plaintiff can work. (Doc. 8 at 19.)

In order for a VE's testimony to constitute substantial evidence, the hypothetical question posed by the ALJ must comprise all of the claimant's impairments. *Wilson v. Barnhart*, 284 F.2d 1219, 1227 (11th Cir. 2002). In this case, the hypothetical question presented to the vocational expert was consistent with the ALJ's RFC determination. As previously discussed, the ALJ's RFC determination is supported by the medical evidence in the record. The ALJ properly presented the VE with a hypothetical question asking whether an individual of Plaintiff's age, education, and past work experience, with the RFC for all levels of work but with the moderate limitations as determined, could perform any jobs. (Tr. at 52-55.) Therefore, the ALJ properly relied upon the VE testimony based on that RFC. (Tr. at 28.)

**IV.     Conclusion**

Upon review of the administrative record, and considering all of Ms. Griffin's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this <u>13th</u> day of <u>August 2013</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[170956]